IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GENE KENNETH SEVILLA, | CIVIL NO. 21-00331 JAO-WRP |
| Plaintiff, | |
| vs. | **ORDER AFFIRMING DECISION OF COMMISSIONER OF SOCIAL SECURITY** |
| KILOLO KIJAKAZI, COMMISSIONER OF SOCIAL SECURITY; | |
| Defendant. | |

**ORDER AFFIRMING DECISION OF COMMISSIONER OF SOCIAL SECURITY**

Plaintiff Gene Kenneth Sevilla ("Plaintiff") appeals Defendant Commissioner of Social Security Kilolo Kijakazi's (the "Commissioner") denial of his application for social security disability benefits. He asks the Court to reverse the Commissioner's finding that he is not disabled and remand the matter for a new administrative hearing. Specifically, Plaintiff asserts that the Administrative Law Judge ("ALJ") improperly rejected Plaintiff's testimony regarding the severity of his physical and mental symptoms.

For the following reasons, the Court AFFIRMS the Commissioner's decision.

## I.   ADMINISTRATIVE PROCEEDINGS

In June 2018, Plaintiff applied for disability insurance benefits. *See* ECF No. 12 (Administrative Record ("AR")); AR at 15; *id.* at 163–71.[1] The Social Security Administration denied his claim on November 19, 2018 and his request for reconsideration on April 4, 2019. *Id.* at 15.

Plaintiff testified during his telephonic hearing before the ALJ on February 16, 2021. *See id.* at 15, 21. On March 4, 2021, the ALJ issued his Decision. *Id.* at 28. The ALJ concluded in part that Plaintiff had not been under a disability from August 1, 2016 until the date of the Decision. *Id.* at 16.

Progressing through the five-step sequential evaluation, the ALJ first determined that Plaintiff had not engaged in substantial gainful employment since the alleged onset date of Plaintiff's disability. *Id.* at 18. At step two, the ALJ listed the following as Plaintiff's severe impairments: "degenerative disc disease of the lumbar spine with radiculopathy; headaches; sinusitis with nasal polyps; chronic allergic rhinitis and pansinusitis, status post sinus surgery; major depressive disorder; and post traumatic stress disorder (PTSD)." *Id.* At step three,

---

[1] When referencing the AR, the Court cites the pagination at the bottom of the page. ECF citations reference the pagination supplied by CM/ECF in the page's header.

the ALJ found that those impairments did not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* at 18–20. The ALJ then calculated that Plaintiff had the residual functional capacity ("RFC") to:

> [P]erform light work as defined in 20 CFR 404.1567(b), except: lift and carry 20 pounds occasionally, 10 pounds frequently; stand and walk for four hours in an eight hour period, but only one hour at a time, and then this person would need to be off their feet for up to five minutes and then can stand and walk again; sit six hours in an eight hour period, but every 30 minutes this person needs to be free to reposition himself to relieve discomfort, although would not have to leave the workstation; pushing and pulling with the lower extremities-occasional use of foot pedals; occasional use of stairs; never ladders, ropes, or scaffolds; occasional balancing; occasional stooping; no kneeling; occasional crouching; no crawling; avoid concentrated exposure to hazardous machinery and unprotected heights; avoid concentrated exposure to vibration; only occasional changes in work setting; rule out production rate pace work; occasional interaction with the public; and frequent interaction with coworkers and supervisors.

*Id.* at 20; *see id.* at 20–26.

During the hearing, the ALJ presented the RFC to the vocational expert, who testified that Plaintiff would not be able to do his past work. *See id.* at 46. The ALJ concluded the same at step 4 of his analysis. *Id.* at 26. At step 5, however, the ALJ accepted the vocational expert's testimony that Plaintiff would be able to perform the requirements of occupations such as office helper, routing clerk, or mail clerk. *See id.* at 27. The ALJ also determined that significant numbers of

those jobs existed in the national economy.  *Id.* at 27.  Based on that conclusion,

the ALJ found Plaintiff not disabled.  *Id.* at 27–28.

## II.   LEGAL STANDARD

### A.   Standard of Review

The decision of the Commissioner must be affirmed "if it is supported by

substantial evidence and if the Commissioner applied the correct legal standards."

*Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013) (citation omitted).

"Substantial evidence means more than a mere scintilla, but less than a

preponderance.  It means such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion."  *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th

Cir. 2017) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th

Cir. 2005) (citation omitted).  To determine whether there is substantial evidence

to support the ALJ's decision, a court "must consider the entire record as a whole,

weighing both the evidence that supports and the evidence that detracts from the

Commissioner's conclusion, and may not affirm simply by isolating a specific

quantum of supporting evidence."  *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th

Cir. 2014) (citation omitted).  If the record, considered as a whole, can reasonably

support either affirming or reversing the ALJ's decision, the decision must be

affirmed.  *See Hiler v. Astrue*, 687 F.3d 1209, 1211 (9th Cir. 2012); *Orn v. Astrue*,

495 F.3d 625, 630 (9th Cir. 2007) ("'Where evidence is susceptible to more than

one rational interpretation,' the ALJ's decision should be upheld." (citation omitted)); *Burch*, 400 F.3d at 679.  The ALJ, as the finder of fact, is responsible for weighing the evidence, resolving conflicts and ambiguities, and determining credibility.  *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

Even where legal error occurs, the decision must be upheld "where that effort is harmless, meaning that it is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citation omitted).

**B.     Eligibility for Disability Benefits**

To be eligible for disability insurance benefits, a claimant must demonstrate that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In addition, it may only be determined that a claimant is under a disability "if his physical or mental impairment or impairments are of such severity that he is not only unable to do [her] previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

Only disabilities existing before the date last insured establish entitlement to disability insurance benefits. *See Sam v. Astrue*, 550 F.3d 808, 810 (9th Cir. 2008) (citing *Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (per curiam)).

A five-step analysis is employed in evaluating disability claims:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, App. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the residual functional capacity ("RFC") to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch*, 400 F.3d at 679; 20 C.F.R. § 404.1520. It is the claimant's burden to prove a disability in steps one through four of the analysis. *See Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citation omitted).

## III.   DISCUSSION

**A.    Credibility Determination**

Plaintiff only appeals the Decision on one legal ground.  *See* ECF No. 15 at

16–30.  He argues that the RFC determination was not based on substantial

evidence because the ALJ rejected Plaintiff's testimony about the severity of his

symptoms without providing the requisite specific, clear, and convincing reasons

for doing so.  *See id.*  Specifically, Plaintiff claims that his mental health and back

pain symptoms impaired him more than as determined by the ALJ, that such

limitations rendered him unemployable, and that the ALJ disregarded testimony

about the symptoms without providing sufficient reasons.  *See id.* at 19–20.  In

short, Plaintiff challenges the ALJ's credibility determination.

"Credibility determinations are the province of the ALJ." *Fair v. Bowen*,

885 F.2d 597, 604 (9th Cir. 1989) (citation omitted); *see Greger v. Barnhart*, 464

F.3d 968, 972 (9th Cir. 2006) ("[Q]uestions of credibility and resolutions of

conflicts in the testimony are functions solely of the Secretary." (internal

quotations marks and citation omitted)); *Parra v. Astrue*, 481 F.3d 742, 750 (9th

Cir. 2007).  When the ALJ makes specific findings justifying a decision to

disbelieve an allegation of excess pain, and those findings are supported by

substantial evidence in the record, it is not the Court's role to second-guess the

ALJ's decision.  *See Fair*, 885 F.2d at 604.  The Ninth Circuit has established a

two-step analysis for determining the extent to which a claimant's symptom testimony must be credited:

> "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.  In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.  Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.
>
> "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases."

*Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014–15) (footnote omitted); *see Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012), superseded by regulation on other grounds (identifying two-step analysis in assessing the credibility of a claimant's testimony regarding the subjective pain or intensity of symptoms); *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  That said, the ALJ need not "'believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'"  *Molina*, 674 F.3d at 1112 (quoting *Fair*, 885 F.2d at 603).

Credibility determinations must be made with sufficiently specific findings to allow the court to conclude that the ALJ did not arbitrarily discredit a claimant's testimony.  *See Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991) (en banc)).  The following factors are relevant in reviewing an ALJ's credibility findings, and are also required by the SSA:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter*, 504 F.3d at 1040 (footnote and citations omitted); *see Orn*, 495 F.3d at 636 (ALJs may consider the following factors in weighing a claimant's credibility:  "reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and 'unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment.'" (quoting *Fair*, 885 F.2d at 603) (other citation omitted)).

Here, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence

and other evidence in the record." AR at 20. Plaintiff highlights a few pieces of his testimony that he argues the ALJ improperly disregarded.

As to his mental health impairments, Plaintiff focuses on his testimony that his symptoms made it difficult to leave the house many days and interact with others. *See* ECF No. 15 at 19, 25–26. And that even when Plaintiff left the house, he would have to sit in his car to meditate before grocery shopping. *See id.* Regarding his lumbar spine pain, Plaintiff challenges the ALJ's alleged rejection of Plaintiff's testimony that he had to lie down every couple of hours for thirty minutes or an hour. *See id.* at 19, 26.

More specifically, Plaintiff challenges the ALJ's failure to sufficiently explain why he did not include these alleged limitations in the RFC determination. *Id.* at 19–20. He further argues that the ALJ's purported error was not harmless because the vocational expert testified that missing more than two days of work per month or being unproductive more than ten percent of an eight-hour workday would render him unemployable. *See id.* The Commissioner responds that the ALJ properly considered Plaintiff's testimony, compared it to other evidence in the record, concluded that it was inconsistent, and adequately described his reasoning. ECF No. 16 at 13–30. The Court concludes that the ALJ's analysis was sufficient. It will address Plaintiff's arguments as to mental and physical symptoms separately.

1.      **The ALJ Gave Clear, Convincing, And Specific Reasons For Rejecting Plaintiff's Testimony Concerning Some Mental Health Limitations**

Plaintiff primarily challenges the ALJ's failure to credit his testimony that his mental health symptoms "make it difficult to leave the house many days," meaning he would have to take too many days off work.  *See* ECF No. 15 at 19; AR at 212.[2]  First, Plaintiff argues that the Decision failed to identify the testimony that Plaintiff could not leave his house many days and failed to link that testimony to contradictory parts of the record.  *See* ECF No. 15 at 20–22.  In arguing that the ALJ failed to identify the rejected testimony or link it to parts of the record, Plaintiff heavily relies on *Brown-Hunter*.  *See id.* at 20–22.  In *Brown-Hunter*, "the ALJ failed to identify the testimony she found not credible," and thus failed to "link that testimony to the particular parts of the record supporting her non-credibility determination."  *Brown-Hunter*, 806 F.3d at 494.  Here, however,  the ALJ explicitly noted that Plaintiff "reported difficultly [sic] leaving the house many days and interacting with others due to anxiety, depression, and PTSD."  AR

---

[2]  Plaintiff also focuses on his testimony that he can grocery shop, but that it takes him a long time, and that before shopping he has to sit in his car and meditate. ECF No. 15 at 19; AR at 42.  The transcript from the ALJ hearing says "medicate" rather than "meditate," *see* AR at 42, and the Decision repeats "medication," *id.* at 21.  But Plaintiff's Adult Function Report suggests he meditates before shopping. *See id.* at 213.  To the extent Plaintiff argues that the ALJ erred in failing to address Plaintiff's need to meditate before shopping, the Court finds no error.  The ALJ is not required to cite to every bit of evidence in the record.  *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).

at 21.  The ALJ thus at least *identified* the testimony that he ultimately did not

incorporate into his RFC determination.  Although the ALJ did not repeat

Plaintiff's testimony about difficulty leaving the house verbatim, the references to

Plaintiff's difficulty with interacting, completing tasks, and handling stress —

when read in context — demonstrate that the ALJ addressed the testimony.  The

ALJ then linked that testimony to contradictory medical evidence:

> Despite the claimant's reported difficulty interacting, sleeping, concentrating, remembering, completing tasks, understanding and following instructions, and handling stress; the mental status exam findings of record showed:  no history of psychiatric hospitalizations (9F/4); improvement with medication, no depression, no suicidal or homicidal ideations (2F/56; 5F/20; 9F/10); the claimant was calm and cooperative (18F/32-33); fair sleep (2F/55-58; 5F/22), positive relationships (2F/56); "normal, happy" to "slightly above neutral" mood, affect slightly constricted to full range and appropriate to content (7F/9-10;   9F/3-7;   18F/18-19),   linear   thoughts,   intact recent/remote   memory,   normal   and   sustained attention/concentration, mildly impaired to adequate insight and judgment (7F/9-10; 9F/3-7; 18F/32-33); insomnia improved with medications, and assessment with MDD, recurrent, in partial remission (2F/55-58).

 AR at 21–22.

Additionally, the ALJ noted that "[i]n detail, the record starting on August 1,

2016, does not show that the claimant's . . . headaches . . . major depressive

disorder (MDD) . . . and post traumatic stress disorder (PTSD) . . . resulted in

limitations greater than those assessed in the above residual functional capacity.

*Id.* at 22.  After reviewing some physical symptoms, the ALJ returned to Plaintiff's

"major depressive disorder, PTSD, and headaches" and reviewed years of treatment notes. *Id.* at 23. While the ALJ did not explain why he included each piece of evidence, many of the cited notes stated things such as, "[o]n exam, the claimant had an 'okay' mood, slightly constricted but relatively bright affect, appropriate to content, well-related, linear thoughts, he was oriented times four, and had fair insight and judgment." *Id.* (citation omitted). Or, "exams showed unremarkable findings, including euthymic mood and congruent affect" even though "claimant was diagnosed with chronic PTSD." *Id.* at 24.

The ALJ further demonstrates his reasoning in rejecting the Plaintiff's Veterans Affairs readjustment counselor's opinion that Plaintiff would miss more than three work days per month. *See id.* at 24–25. The ALJ did not find the opinion persuasive because it was:

> [N]ot well supported by objective findings nor consistent with the longitudinal findings of: no history of psychiatric hospitalizations (9F/4); improvement with medication, no depression, no suicidal or homicidal ideations (2F/56; 5F/20; 9F/10); the claimant was calm and cooperative (18F/32-33); fair sleep (2F/55-58; 5F/22), positive relationships (2F/56); "normal, happy" to "slightly above neutral" mood, affect slightly constricted to full range and appropriate to content (7F/9-10; 9F/3-7; 18F/18-19); linear thoughts, intact recent/remote memory, normal and sustained attention/concentration, and mildly impaired to adequate insight and judgment (7F/9-10; 9F/3-7; 18F/32-33); insomnia improved with medications; and assessment with MDD, recurrent, in partial remission (2F/55-58)[.]

*Id.* at 25.  In sum, the ALJ cited to objective medical evidence in the record that arguably contradicted Plaintiff's testimony about the severity of his symptoms. True, the ALJ also cites some evidence from the record that could support Plaintiff's testimony, but it is not the Court's role to second-guess the ALJ's credibility determination in such situations.  *See Fair*, 885 F.2d at 604.  And while the ALJ's treatment of the objective medical evidence strays close to an improper "running narrative," *Christine G. v. Saul*, 402 F. Supp. 3d 913, 925 (C.D. Cal. 2019), the Court can discern the ALJ's path, *cf. Brown-Hunter*, 806 F.3d at 492.

But this does not end the Court's inquiry because objective medical evidence alone is insufficient to reject symptom severity testimony.[3]  *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); SSR 16-3P, 2017 WL 5180304, at *5 (Oct. 25, 2017) ("[W]e will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." (footnote omitted)).  Nonetheless, the Court concludes that the ALJ also linked Plaintiff's testimony to evidence of Plaintiff's daily activities and to the type and effectiveness of medical treatments.

---

[3]  As the Commissioner notes, Plaintiff does not challenge the ALJ's findings regarding the objective medical evidence.  *See* ECF No. 16 at 22.  Rather, Plaintiff argues that objective medical evidence alone, without other types of evidence, cannot support an ALJ's adverse credibility finding.  *See* ECF No. 15 at 22–23.

Turning first to the significance and effectiveness of treatments, the ALJ commented that "[d]espite the claimant's reported difficulty interacting, sleeping, concentrating, remembering, completing tasks, understanding and following instructions, and handling stress; the mental status exam findings of record showed:  no history of psychiatric hospitalizations (9F/4); [and] improvement with medication."  AR at 21 (some citations omitted).  Additionally, there was evidence that Plaintiff's mental health diagnoses "improved with medication changes."  *Id.* at 23.

An ALJ may consider the effectiveness of a medication when evaluating a claimant's testimony about the symptom severity.  *Cf. Molina*, 674 F.3d at 1113 (affirming an ALJ's adverse credibility finding where claimant's testimony conflicted with doctor's conclusion that claimant was able to control anxiety disorder with medication and self-calming measures); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039–40 (9th Cir. 2008) (evidence of responsiveness to conservative treatment can undermine claims of disabling nature of condition); *see also* SSR 16-3p, 2017 WL 5180304, at *7–8 (listing treatments and effectiveness of medication as factors to consider in assessing the intensity, persistence, and limiting effects of a claimant's symptoms).  Although others could have drawn different conclusions from that evidence, the ALJ was within his right to consider the effectiveness of Plaintiff's medication in evaluating the severity of his symptoms.  Thus, in

addition to the above-cited medical evidence, the evidence of effective treatment supports the ALJ's conclusion.

Similarly, the ALJ's citation to Plaintiff's daily activities as contradictory to his testimony was proper.  Immediately after summarizing Plaintiff's testimony, the Decision states:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the claimant also testified he can prepare simple microwave meals, and he goes shopping from time to time, with medication and taking his time.  He reported on a typical day he sometimes eats out, or goes to see friends to hang out for an hour or so, once or twice a week; he drives; he goes to medical appointments, the Veteran's Affairs center, the "kava bar," and the beach, weekly; and he gets along with authority figures "moderately ok" (4E).

AR at 21.  Even though such activities do not necessarily demonstrate an ability to perform a full-time job, the ALJ reasonably concluded that they contradicted Plaintiff's testimony that it was difficult to leave the house many days and interact with others.  *See Burch*, 400 F.3d at 680–81 (9th Cir. 2005) ("Although the evidence of [claimant's] daily activities may also admit of an interpretation more favorable to [claimant], the ALJ's interpretation was rational, and 'we must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.'" (quoting *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)) (brackets omitted)).

While the ALJ's Decision does not include a sentence such as, "I reject Plaintiff's testimony that he has difficulty leaving the house many days, because X, Y, and Z reasons," an ALJ need not "perform a line-by-line exegesis of the claimant's testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (citation omitted).[4]  And the Court "will not fault the agency merely for explaining its decision with 'less than ideal clarity.'" *Brown-Hunter*, 806 F.3d at 492 (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)). The ALJ's discussion of objective medical evidence, effective treatment, and daily activities that arguably contradicted Plaintiff's statements was sufficient to "allow[] for meaningful review." *See id.*  The Court thus rejects Plaintiff's contention the ALJ failed to describe sufficiently his reason for rejecting Plaintiff's testimony.

**2.    The ALJ Gave Clear, Convincing, And Specific Reasons For Rejecting Plaintiff's Testimony Regarding His Lumbar Spine Limitations**

As mentioned above, Plaintiff also challenges the ALJ's treatment of one portion of his testimony about his back pain — that he needs to lie down for thirty minutes to an hour every few hours.  *See* ECF No. 15 at 19, 25–26.  Plaintiff

---

[4]  As an aside, Plaintiff merely testified that it was "difficult" to leave his house "many" days.  This testimony is vague both to the degree of difficulty and as to what constitutes "many."  *See Tommasetti*, 533 F.3d at 1040 (noting that an ALJ may discount vague symptom testimony).

claims that lying down so often would reduce his productivity below the threshold that the vocational expert deemed acceptable. *Id.* at 19–20 (citing testimony at AR 48–49). As with Plaintiff's testimony regarding his mental health limitations, the ALJ explicitly recited Plaintiff's claim that he frequently needed to lie down. AR at 21. Still, Plaintiff argues that the ALJ's summation of Plaintiff's need to lie down failed to comply with Social Security Rule 16-3p. Specifically, Plaintiff notes that under that rule, an ALJ — in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms — shall consider "[a]ny measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board)." SSR 16-3p, 2017 WL 5180304, at *7–8; *see* ECF No. 15 at 26 (quoting *id.*). And that an ALJ must "discuss the factors pertinent to the evidence of record." SSR 16-3p. 2017 WL 5180304, at *8. But Plaintiff's citation to the rule is inapposite because the ALJ *did* discuss Plaintiff's need to lie down. *See* AR at 21 ("The claimant testified that . . . he has to lie down every few hours on the floor, for 30 minutes to an hour[.]"). He just concluded that the limitation was less severe than Plaintiff had testified, but nothing in Social Security Rule 16-3p requires the ALJ to accept Plaintiff's testimony. Whether the ALJ properly rejected the testimony is a distinct inquiry.

To assess Plaintiff's credibility, the ALJ again began with objective medical evidence that contradicted Plaintiff's testimony. The Decision noted that "despite the claimant's reported difficulty lifting, squatting, bending, standing, sitting, walking, and sitting [sic]; imaging showed L4-L5 and L5-S1 degenerative disc disease without spinal stenosis or nerve root compression (1F/62); and exam findings consistently showed normal gait/station, good muscle strength and tone." *Id.* (citations omitted). The ALJ continued:

> As for the claimant's degenerative disc disease of the lumbar spine; a lumbosacral spine x-ray on August 13, 2015 showed normal alignment and disc spaces without fracture and very minimal osteophytic spurring, and the left sacroiliac joint appeared slightly ill defined, with sacroiliitis not excluded (2F/3); an August 17, 2015 x-ray of the sacroiliac joints showed negative findings (2F/2); lumbar magnetic resonance imaging (MRI) on September 1, 2015 showed L4-L5 and L5-S1 degenerative disc disease without spinal stenosis or nerve root compression (1F/62). As noted, exams consistently showed normal gait/station, and good muscle strength and tone (e.g., 2F/81 (March 16, 2017); 2F/57 (July 14, 2017); 5F/21 (June 12, 2018); 7F/9 (October 24, 2018); 18F/66 (July 12, 2019); 18F/26 (November 14, 2019)). March 10, 2017 chiropractic treatment notes showed treatment was helping for lower back and cervical pain; with a non-focal neurological exam (2F/83-85). On July 5, 2017 the claimant sought care for spinal and neck issues after doing pull ups with body armor and falling on stiff legs; the claimant reported chiropractic care helps a lot; a physical exam showed 2+ pulses and no edema (2F/60-61). From July 29, 2019 to November 20, 2020, the claimant continued to undergo chiropractic therapy for lower back and neck pain; with muscle spasms on palpation of the lower back and hips (17F; 22F).

AR at 22.

19

Although the ALJ did not explicitly repeat Plaintiff's testimony about lying down before addressing the medical evidence, "the linkage between the two is readily discernable." *Ho v. Saul*, CIV. NO. 20- 00149 JMS-RT, 2021 WL 1828259, at *7 (D. Haw. May 7, 2021); *cf. Brown-Hunter*, 806 F.3d at 495 (holding error not harmless because court could not discern the ALJ's path to its conclusion). Plaintiff testified about needing to lie down in response to his attorney's questioning about his back. *See* AR at 42–43. The ALJ then analyzed the medical evidence and effectiveness of treatments as to Plaintiff's back pain. He concluded that the medical imaging and physical exams were inconsistent with Plaintiff's testimony about the severity of the pain and limitations. *See id.* at 22. The linkage is plain.

Similarly, the ALJ's reliance on the effectiveness of chiropractic therapy supports his rejection of Plaintiff's symptom testimony. The ALJ repeated Plaintiff's prior report that the chiropractic care "help[ed] a lot," and that Plaintiff continued the chiropractic care through at least November 2020. *Id.* Such evidence of relatively non-invasive treatment, and the fact it seemed to be working, provided a reasonable basis from which the ALJ could conclude that Plaintiff's testimony as to the severity of his back pain was not fully credible. *See Ho*, 2021 WL 1828259, at *7 (affirming ALJ's credibility determination where ALJ considered objective medical evidence and effectiveness of mild treatment

regime); *cf. Tommasetti*, 533 F.3d 1039–40 (affirming ALJ's rejection of claims of disabling pain when ALJ relied on fact that claimant responded favorably to conservative treatment); *Morris v. Colvin*, No. CV 13–6236–OP, 2014 WL 2547599, at *4 (C.D. Cal. June 3, 2014) (describing chiropractic treatment as conservative in affirming ALJ's rejection of pain testimony); *Cherry v. Astrue*, No. CV 08–478 TUC DCB, 2009 WL 2347075, at *12 (D. Ariz. July 30, 2009) (affirming ALJ's rejection of testimony of disabling pain based in part on evidence that conservative treatment including chiropractic treatment improved her pain). Thus, the ALJ provided a sufficiently clear justification — beyond just objective medical evidence — for rejecting Plaintiff's testimony.  In sum, the ALJ satisfied his burden, and the Court affirms the Decision.

## IV.   CONCLUSION

For the following reasons, the Court AFFIRMS the Commissioner's Decision.

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, May 2, 2022.



_____
Jill A. Otake
United States District Judge

---

CIV. NO. 21-00331 JAO-WRP; *Sevilla v. Kijakazi*;  Order Affirming Decision of Commissioner of Social Security